U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

JUN 13 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| RONALD LEE | : | DOCKET NO. 04-770 |
| VS. | : | JUDGE TRIMBLE |
| PPG INDUSTRIES, INC. ND QUALITY CARRIERS, INC. | : | MAGISTRATE JUDGE WILSON |

### MEMORANDUM RULING

Before the Court is "Cytec Industries, Inc.'s Motion for Summary Judgment" (doc. #64) wherein the mover seeks to have this Court dismiss all claims made against it by third-party plaintiff, PPG Industries, Inc. ("PPG").

### FACTUAL STATEMENT

This case arises out of the sale and delivery of sulfuric acid by Cytec Industries Inc. ("Cytec") to PPG. On or about February 28, 2000, PPG forwarded to Cytec a Request for Quotation, seeking a price for a three-year supply of sulfuric acid. In response to the Request for Quotation (Inquiry No. 6164), Cytec submitted a quotation for the price of the sulfuric acid. On or about March 23, 2000, PPG forwarded Purchase Order No. 003244 to Cytec for the purchase of PPG's sulfuric acid requirements for three (3) years.[1] Cytec then contracted with Quality Carriers, Inc. ("Quality") to transport the sulfuric acid to the PPG facility.

Plaintiff, Ronald Lee, an owner-operator contracted by Quality alleges that on December 1,

---

[1] Inquiry Number 6164 is referenced on the Purchase Order.

2002, he delivered a trailer load of sulfuric acid to the PPG facilities in Lake Charles, Louisiana.[2] In order to unload the sulfuric acid from its trailer, Quality provided a coupling hose attached to the trailer with a "male" coupling attachment at the end to be secured to a hose provided by PPG, the receiving facility. PPG provided the "female" end of the coupling hose to receive the sulfuric acid.

Mr. Lee attached the hose couplings and locked down the cam lock levers and began unloading the sulfuric acid. While the sulfuric acid was unloading, the cam lock levers became unlocked and the hose coupling became unsecured. Recognizing that the cam lock levers were becoming unlocked, Mr. Lee went to the hose coupling to secure it. As he approached, the hose disconnected and spewed the sulfuric acid onto Mr. Lee's face, neck, hands and arms causing significant chemical burning, intense pain and suffering.

The Petition for Damages names as defendants, PPG and Quality. PPG filed a third party complaint against Cytec, the seller of the sulfuric acid. PPG asserts claims of indemnity and seeks reimbursement for attorneys' fees and litigation expenses from Cytec. PPG relies upon an ongoing contractual agreement between it and Cytec formalized in PPG Purchase Order No. 3244 and modified by several subsequent "change advice[s].

Cytec maintains that it has no duty to indemnify PPG under the terms of the contract between them and argues that the Request for Quotation is the contract that governs the conduct between the parties, not the subsequent Purchase Order.

## SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable

---

[2] The trailer containing the sulfuric acid was owned by Quality.

to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[4] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[5] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[6] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[7] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[8] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[9] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[10]

---

[3] Fed. R.Civ. P. 56(c).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[5] *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

[6] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[7] *Anderson*, 477 U.S. at 249.

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[10] *Anderson*, 477 U.S. at 249-50.

## LAW AND ANALYSIS

Relying on an indemnification provision in the Request for Quotation, which it argues governs the relationship between Cytec and PPG, Cytec maintains that it has no duty to defend PPG. PPG maintains that a subsequent formal agreement, Purchase Order No. 003244, is the contract which governs the parties. Alternatively, Cytec maintains that even if the Purchase Order is the contract between the parties, Cytec has no duty to defend PPG because (1) the injury to Mr. Lee is the result of the sole negligence of PPG, and/or (2) the risk of loss transferred to the buyer [PPG] the moment it reached its point of destination – the PPG facility.

*Which contract governs?*

In February 2000, PPG forwarded to Cytec a preprinted form entitled "Request for Quotation" as an offer to purchase sulfuric acid for a three year period.[11] Under the heading "INSTRUCTIONS FOR QUOTATION" the Request for Quotation contains the following language:

   3.   BASE YOUR QUOTATIONS ON THE TERMS AND CONDITIONS ATTACHED AND/OR TYPED HEREIN.
   4.   EXCEPT AS AND TO THE EXTENT THAT YOU SPECIFICALLY STATE ABOVE, IT IS UNDERSTOOD THE CONDITIONS OF PURCHASE ON THE REVERSE SIDE HEREOF WILL APPLY TO ANY ORDER WE MAY PLACE IN RESPONSE TO YOUR QUOTATION.[12]

The reverse side of the Request for Quotation contains the heading "GENERAL CONDITIONS" and states in part:

   1.   ACCEPTANCE. This Purchase Order contains the entire contract between the parties hereto with respect to the materials specified or the work to be performed hereunder, and no contract or other understanding in any way

---

[11] Cytec Exhibit A.

[12] *Id.* at p. 1.

purporting to change, modify, or supersede the terms hereof shall be binding upon the Buyer unless otherwise expressly agreed to by the Buyer in writing. Seller's acceptance of this Purchase Order (whether by execution of the Acceptance Copy or otherwise) commencement of performance hereunder or shipment of the materials ordered hereby shall conclusively evidence Seller's acceptance of this Purchase Order and the terms hereof. Buyer hereby expressly objects to any provision, terms and conditions of any of Seller's printed forms or other writings which is [sic] additional to, different from or inconsistent with those contained or referred to herein. Buyer's acceptance of or payment for any shipment required under this Purchase Order shall not in any way alter the terms hereof.[13]

Cytec submitted a quotation for the price of the sulfuric acid on March 9, 2000 and a revised quotation (changing only the amount, but not the terms and conditions) on March 22, 2000. On or about March 23, 2000, PPG forwarded to Cytec Purchase Order No. 003244 for the purchase of PPG's sulfuric acid requirements for a three year period. The subsequent Purchase Order contained language in the indemnification provision that was different than that of the Request for Quotation. Cytec complains that it did not agree to these different terms, and that because certain paragraphs were "blacked-out", the language was incomprehensible. Hence, Cytec argues that PPG never provided it with a legible copy of this language and never advised Cytec of its alleged intention to substitute the terms on the reverse side of Purchase Order No. 003244 for terms originally agreed to by Cytec in the Request for Quotation. The Court notes that the language that is blacked-out on the Purchase Order has no bearing on the issue of indemnity.[14]

Cytec argues that there was no discussion and no meeting of the minds necessary to establish

---

[13] *Id.* at reverse side of p. 1.

[14] The blacked-out portion contains information as to PPG's local address and the name and address of the third party vendor on the front side and language concerning the contract and package and shipping on the reverse side. The Purchase Order in the sealed envelope that was delivered to the Vendor is not blacked out. See PPG Exhibit 3, sealed envelope.

an agreement to alter the terms of the original contract between PPG and Cytec. Cytec relies on language in the Request for Quotation that states that "IT IS UNDERSTOOD THAT THE CONDITIONS OF PURCHASE SHOWN ON THE REVERSE SIDE HEREOF WILL APPLY TO ANY ORDER WE [PPG] MAY PLACE IN RESPONSE TO YOUR [CYTEC] QUOTATION." The Request for Quotation instructed Cytec to take into consideration the terms and conditions located on the reverse side when calculating its quotation. The language of the request provided that PPG "expressly objects to any provision, terms and conditions of . . . other writings that [are] additional to, different from or inconsistent with those contained or referred herein. Buyer's acceptance of or payment for any shipment required under this Purchase Order shall not in any way alter the terms hereof."

PPG maintains that the Request for Quotation, which does not set out a price or means of determining price, is only a bid solicitation. PPG further maintains that regardless which document governs, Cytec has not eliminated beyond dispute its indemnity obligation. PPG relies on language in the Purchase Order to support its position that the Purchase Order is the contract between the parties. In red capital letter at the top right side of its front, the Purchase Order provides that it "IS SUBJECT TO TERMS AND CONDITIONS ON THE REVERSE SIDE." The first condition on the reverse provides:

> **CONTRACT.** This Order will become a binding contract on the terms herein set forth upon (1) Seller's written acceptance of this order, (b) Seller's shipment of any permitted unit of the items herein described or (c) other conduct by Seller recognizing the existence of a contract. This Order is to be construed under the laws of the state in which is located Seller's plant which issued the order as shown on the reverse side, and is not subject to change or variation, irrespective of the wording of Seller's acceptance, without Buyer's written consent and is not assignable or

6

transferable without Buyer's written consent.[15]

The Purchase Order required that Cytec sign and return the acknowledgment copy. Even though Cytec did not sign and return the acknowledgment copy, it commenced supplying, delivering and unloading the acid without objecting to any of the terms of the Purchase Order. PPG maintains that when Cytec shipped the sulfuric acid, such performance was an acceptance of the terms and conditions of the Purchase Order. PPG cites *Campbell v. Sonat Offshore Drilling, Inc.*,[16] for the proposition that the Purchase Order can be a contract. There is no doubt that a purchase order can be a contract. The issue is whether the terms and conditions of the Request for Quotation govern, or if the Purchase Order is a modification of the original offer and now governs the conduct between the parties.

The Request for Quotation which was drafted by PPG expressly stated that the Buyer (PPG) would object to any contrary provisions in the Seller's (Cytec's) forms. Furthermore, on the reverse side of the Purchase Order under the heading "CONTRACT", the Order unambiguously states that the "Order will become a binding contract on the terms herein set forth upon (1) Seller's written acceptance of this order, (b) Seller's shipment of any permitted unit of the items herein described or (c) other conduct by Seller recognizing the existence of a contract."[17] It is undisputed that Cytec shipped the sulfuric acid. Hence, without objecting to the different terms, Cytec's conduct can be construed as nothing other than an acceptance of the Purchase Order along with its terms and

---

[15] *Id.*, reverse side of p. 1.

[16] 979 F.2d 1115 (5th Cir. 1992).

[17] PPG Exhibit 3, reverse side of p. 1.

conditions.

*Does Cytec owe PPG indemnity?*

Cytec maintains that it does not owe indemnity to PPG because PPG is solely negligent for Mr. Lee's injuries. The indemnity provision in the Purchase Order is as follows:

> **INDEMNIFICATION.** Seller agrees to indemnify, defend and hold harmless Buyer, its officers, employees and representatives, from and against any and all damages, claims, demands, expenses, (including reasonable attorneys fees) losses or liabilities of any nature whatsoever, and whether involving injury or damage to any person (including employees of Seller) or property and any and all suits, causes of action and proceedings thereon arising or allegedly arising from or related to the subject matter of this Purchase Order, including those losses caused by the negligence of Buyer, ***but except where such injury or damages was caused by the sole negligence of Buyer.*** This indemnity shall survive the termination or cancellation of this Purchase Order, or any part thereof. (emphasis added)[18]

The above-stated provision clearly requires Cytec to indemnify PPG unless Mr. Lee's injuries were caused solely by PPG. Mr. Lee's complaint alleges liability against both PPG and Quality. Hence, the allegations are not solely against PPG. Furthermore, summary judgment evidence has been submitted to the Court that raises a genuine issue of material fact as to negligence on the part of both Cytec and Quality. Accordingly, there are triable issues as to whether someone other than PPG was at fault in causing Mr. Lee's injuries.

Finally, Cytec maintains that the ownership and risk of loss associated with the goods transferred to PPG the moment the sulfuric acid reached its destination – the PPG facility – but before it was transported or unloaded from Quality's truck to PPG's holding tank. Cytec cites *In re: Evangeline Refining Company, Inc.,*[19] to support its position that delivery of possession occurs at the

---

[18] PPG's Exhibit D, p.1 (reverse side), ¶ 11.

[19] 37 B.R. 450 (Bkcy. W.D. La. 1984).

8

moment the goods reach their destination. The relevant facts in the case state that diesel fuel was unloaded from the carrier's barge into a storage tank located at its destination. The *Evangeline* case did not draw a bright line distinction as to the exact moment the delivery process was complete - such as the moment the carrier arrived at its destination or after the fuel was unloaded from the carrier into the storage tanks.

Cytec hired Quality to transport the sulfuric acid. Quality's driver was in control of unloading the acid into PPG's storage tank. Therefore, the Court finds that delivery was not complete until it was unloaded from Quality's tanker into PPG's storage tank.

## **CONCLUSION**

For the reasons set forth above, the motion for summary judgment filed by Cytec Industries to dismiss all claims asserted against it by PPG Industries, Inc. will be denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 13th day of June, 2007.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE